Ernest St. George Lough and Another, Appellants, *v.* A. Emilius Outerbridge, Adolphus J. Outerbridge and The Quebec Steamship Company, Respondents.

*Ocean freight rates — condition attached to a low rate — absence of discrimination.*

A common carrier on the high seas, whose duties are simply those imposed by the common law, has a right, on lowering its freight rates in competition with another carrier, to require, as a condition of such lower rate, that shippers shall send by its line all their freight for the competitive port of destination during the week of loading, and when this condition is imposed upon all shippers alike, an action does not lie to restrain the carrier from charging the regular higher and not unreasonable rate to a shipper who does not comply with the condition attached to the lower rate.

APPEAL by the plaintiffs, Ernest St. George Lough and Robert H. Burrows, from a judgment of the Supreme Court dismissing the complaint upon the merits, entered in the office of the clerk of the city and county of New York on the 6th day of January, 1893, upon a decision of the court rendered at the New York Special Term.

This action was brought to obtain a permanent injunction restraining the defendants from charging the plaintiffs higher rates for carrying goods than were charged to other shippers.

The plaintiffs are partners, under the firm name of G. F. Lough & Co., engaged in business at the city of New York, as export commission merchants, shipping goods to the Windward islands.

The individual defendants are engaged in business in the city of New York, under the firm name of A. E. Outerbridge & Co., and are the agents of the Quebec Steamship Company, a Canadian corporation, which now is, and for nineteen years last past has been, engaged in carrying passengers, the mails and merchandise, between the city of New York and the Windward islands. It has employed five or six iron steamers of the highest class in its business, and, during the year 1892, a vessel left New York once in ten days. About six weeks is required to make a trip from New York to the islands and return. Vessels sailed from New York on days advertised without reference to the quantity of cargo shipped.

For seven years prior to the commencement of this action, the *El Callao*, a British steamer, has been engaged in carrying passengers and freight between New York and Cuidad Bolivar, a port in Venezuela. Early in 1892 this steamer began carrying freight from New York to Barbados, at which port she stopped on her regular trips to and from Cuidad Bolivar. She sailed from New York at intervals of five or six weeks, and her freight to Cuidad Bolivar was the principal feature of her business, but such space as was not required for goods shipped to the latter port she filled with merchandise for Barbados and other islands on her route.

On two occasions when the *El Callao* was loading at New York for Barbados, the defendants reduced the regular rates of freight from New York to Barbados from forty to twenty-five cents per barrel, to such shippers as sent all their freight during that week by the defendants' line. In February and June, 1892, when the

*El Callao* was loading for Barbados, the plaintiffs demanded that the defendants should carry by one of its steamers freight from New York to Barbados for twenty-five cents per barrel. This the defendants refused to do unless the plaintiffs would agree to ship all their freight sent during the week of the sailing of defendants' steamer by its line.

The defendants have uniformly charged forty cents per barrel to all shippers upon all occasions, except when a steamer of the defendants and the *El Callao* left New York during the same week. Forty cents per barrel is found to be a fair and just rate, and twenty-five cents per barrel is not profitable for the carrier.

*Evarts, Choate & Beaman,* for the appellants.

*Butler, Stillman & Hubbard,* for the respondents.

FOLLETT, J.:

Prior to December, 1891, the established rate of freight from New York to Barbados was fifty cents per barrel, but in that month the defendants reduced the charge to forty cents, which remained the regular rate up to the time when this action was begun. The uncontradicted evidence is that forty cents is a barely paying rate, and it is found as a fact that this rate "was fair and just and afforded a bare subsistence to vessels carrying at such rate." It was also testified on the trial and was not contradicted "that twenty-five cents is not a profitable rate, because we pay thirteen cents a barrel for the privilege of putting it ashore at Barbados and four cents a barrel for putting it on board here."

The court found that "the rate of twenty-five cents per barrel was not profitable." In February and in June, 1892, the *El Callao* made the rate thirty cents per barrel. On Monday, February 29, 1892, the *Cosmopolitan*, one of defendants' steamers, sailed from New York to Barbados. During the week before the *El Callao* was taking freight for the same place. The plaintiffs were the shipping agents of James H. Innis, and one of them testified that on the twenty-fifth of February he asked the defendants to carry, by the *Cosmopolitan*, 3,500 barrels to Barbados for twenty-five cents. This the defendants refused to do unless the plaintiffs would agree not to ship by the *El Callao*, which were the terms given to all other shippers.

L. Burrows (one of the plaintiffs) said, that "James H. Innes is the only person we are shipping goods to Barbados to, by the *El Callao;* in other words, he takes up the whole space, he is responsible alone and he has nobody else with him." Thus it appears that the plaintiffs furnished all the freight to the *El Callao* for which it had space at thirty cents per barrel, and demanded that the defendants should carry the remainder of their freight, by the *Cosmopolitan,* at twenty-five cents per barrel.

On Saturday, June 4, 1892, the *Trinidad,* one of the defendants' steamers, sailed from New York for Barbados, and during the week previous the *El Callao* was taking freight for the same place. William P. Lough, one of the plaintiffs testified:

"Q. Do you know whether you took all the room that there was in the *El Callao,* available, for Barbados in February and June? A. I believe we did. It was a usual thing for us to do that, we filled up the available space." "The rates that we were paying on the *El Callao* for Barbados were thirty cents per dry barrel. That was so in February, as well as in June."

After exhausting the capacity of the *El Callao,* the plaintiffs demanded that the defendants should carry 1,750 barrels to Barbados for twenty-five cents, which they refused to do, unless the plaintiffs would ship all their freight by the defendants' line.

The plaintiffs' evidence is, that they furnished the *El Callao* in February and in June, with all the freight it could carry to Barbados at thirty cents per barrel, its rate, and then insisted that the defendants should take the remainder of their merchandise at twenty-five cents per barrel. The evidence produced by the plaintiff tended to show, and the fact is undisputed, that the defendants carried for twenty cents per barrel only in case the assignor would send all of his freight by their line, and the plaintiffs testify that the same terms were offered to them.

On such a state of facts there is no foundation for the position that the defendants discriminated against the plaintiffs or against any shippers, as the same terms were offered.plaintiffs as were given to all.

A common carrier has the right to charge different sums for the transportation of goods on different occasions. The defendants had the right to carry goods at twenty-five cents per barrel or for any

less sum, and to establish reasonable conditions upon which they would carry for that price. The condition that all of the consignor's freight, which was shipped during the week of loading, should be sent by defendants' line, if the twenty-five-cent rate was given, was not an unreasonable one.

The defendant corporation is a common carrier on the high seas, open to all, and it has never acquired any rights by the exercise of the power of eminent domain, and its duties are simply those imposed by the rules of the common law. It had the right to compete with the *El Callao* for the carriage of freight, and offer such prices as it saw fit, and so long as it offered the same terms to all shippers, none have a legal cause for complaint.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J.. concurred.

Judgment affirmed, with costs.